RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0153p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

In re: MICHAEL STANSELL,

                *Movant.*            No. 15-4244

On Motion to Authorize the Filing of a Second or
Successive Application for Habeas Corpus Relief.
No. 1:15-cv-01303—Patricia A. Gaughan, District Judge.

Decided and Filed:  July 1, 2016

Before:  SUTTON and COOK, Circuit Judges; HOOD, District Judge.[*]

———————————

## COUNSEL

**ON RESPONSE:** Paul Kerridge, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Respondent.  **ON MOTION:** Michael Stansell, Grafton, Ohio, pro se.

———————————

## OPINION

———————————

SUTTON, Circuit Judge.  Federal law generally gives habeas petitioners one shot to pursue their claims in federal court.  For petitions filed after the first one—"second or successive" petitions in the language of the statute—applicants must overcome strict limits before federal courts will permit them to seek habeas relief.  28 U.S.C. § 2244(b)(3)(A).  At issue in today's case is whether Michael Stansell's habeas petition—filed after the State added a post-release control requirement to his judgment of conviction—is "second or successive" and thus subject to those limits.  We hold that it is not and transfer it to the district court for consideration as an initial petition.

_____

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

In 1998, Stansell pleaded guilty in the Cuyahoga County Court of Common Pleas to multiple sex-related felonies. *See* Ohio Rev. Code §§ 2907.02(A)–(B), 2907.04, 2907.05(A)–(C), 2907.322–.323. The trial court sentenced him to twenty years to life in prison, and his attempts to obtain relief on direct appeal fell short. *See State v. Stansell*, 747 N.E.2d 252 (Ohio 2001) (unpublished table disposition); *State v. Stansell*, No. 75889, 2000 WL 426547, at *1, *6 (Ohio Ct. App. Apr. 20, 2000). He fared no better in federal court, where a district court denied his habeas petition in 2002. *See* 28 U.S.C. § 2254.

In 2013, Stansell returned to state court, seeking to vacate the portion of his sentence that designated him a "sexually violent predator." Resp't App. 109 (Ex. 17); *see* Ohio Rev. Code §§ 2971.01(H)(1), 2971.03(A)(3). The trial court denied his motion. A state appeals court affirmed. But, in doing so, it ruled that the trial court had erred when, as part of Stansell's original sentencing in 1998, it failed to impose a term of post-release control. *State v. Stansell*, 10 N.E.3d 795, 798–99 (Ohio Ct. App. 2014); *see also* Ohio Rev. Code §§ 2929.19(B)(2)(c), (e), 2967.28(B)(1).

(Post-release control under Ohio law is similar to supervised release under federal law. It is "a period of supervision by the adult parole authority after a prisoner's release from imprisonment" during which the individual must comply with certain conditions. Ohio Rev. Code § 2967.01(N). As a few examples, the individual might have to undergo random drug testing, live in a halfway house, or maintain employment. *E.g.*, *id.* §§ 2929.16(A)(4), 2929.17(H), (J).)

The state appeals court remanded Stansell's case "for the limited purpose of properly advising and imposing upon Stansell the requisite period of postrelease control." *Stansell*, 10 N.E.3d at 799. The trial court did just that, telling Stansell that he would be subject to five years of post-release control after his prison term and that the parole authority could sanction him, in some cases by sending him back to prison, if he violated the conditions of post-release control.

This new judgment prompted Stansell to return to federal court, seeking authorization to file a second or successive habeas petition. His petition contains one claim for relief, a claim that he also raised in his first petition—that the state trial court violated his due process rights when it classified him as a sexually violent predator during his original sentencing in 1998.

II.

The Antiterrorism and Effective Death Penalty Act limits the authority of the federal courts to grant relief to individuals who previously filed a habeas petition. 28 U.S.C. § 2244(b); *see Felker v. Turpin*, 518 U.S. 651, 664 (1996). The Act requires petitioners challenging state court judgments to seek authorization in a federal appeals court before filing a "second or successive application" in district court. 28 U.S.C. § 2244(b)(3)(A). "A claim presented in a second or successive habeas corpus application . . . that was presented in a prior application," the statute says, "shall be dismissed." *Id.* § 2244(b)(1). And "[a] claim presented in a second or successive habeas corpus application . . . that was *not* presented in a prior application," the statute adds, "shall be dismissed unless" one of two conditions applies. *Id.* § 2244(b)(2) (emphasis added). The first condition covers claims based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* § 2244(b)(2)(A). The second covers claims based on new facts that "could not have been discovered previously through the exercise of due diligence" and that "establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.* § 2244(b)(2)(B). Individuals who seek to vacate their *federal* sentences must meet similar requirements before filing a second or successive motion. *Id.* § 2255(h).

*Magwood v. Patterson* explains the meaning of the phrase "second or successive" in the federal habeas statute. 561 U.S. 320 (2010). An Alabama court had sentenced Magwood to death, but a federal district court granted him a conditional writ of habeas corpus based on an error that occurred during his sentencing. *Id.* at 324–26. The state court then held another sentencing proceeding and re-imposed the death penalty, which triggered a second federal habeas petition from Magwood. *Id.* at 326, 328. The Supreme Court held that he could file this

petition, which challenged his new capital sentence but not his underlying conviction, without clearing the "second or successive" hurdles. *Id.* at 331, 342.

One part of the inquiry, the Court showed, is easy: The phrase "second or successive" modifies "habeas corpus application." *Id.* at 331–32; *see* 28 U.S.C. § 2244(b)(1)–(2). But what, the Court asked, is a "habeas corpus application"? 561 U.S. at 332. It found the answer in § 2254, which directs federal courts to "entertain an application for a writ of habeas corpus in behalf of a person in custody *pursuant to the judgment of a State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added); *see id.* § 2254(b)(1); 561 U.S. at 332. Habeas petitioners, *Magwood* recognized, "seek[] *invalidation* (in whole or in part) *of the judgment* authorizing [their] confinement," which means "the phrase 'second or successive' must be interpreted with respect to the judgment challenged." 561 U.S. at 332–33 (quotation omitted). If an individual's petition is the first to challenge a particular state judgment—even if the applicant has previously filed other petitions challenging other judgments—the petition is not "second or successive." *Id.* at 331–33. Because Magwood had been resentenced since filing his first habeas petition, he had received a new judgment, which meant he could challenge his resentencing proceedings without having to worry about overcoming the "second or successive" bar. *Id.* at 331, 339, 342.

In adopting a judgment-focused interpretation of the phrase "second or successive," *Magwood* rejected the claim-by-claim approach advanced by the State and the dissent. *Id.* at 331; *see id.* at 349–50 (Kennedy, J., dissenting). That approach would have required courts to look at each claim raised in a habeas petition and determine whether the applicant had a "full and fair opportunity" to raise that claim in a prior petition. *Id.* at 335 (majority opinion); *see id.* at 349 (Kennedy, J., dissenting). But because "second or successive" modifies the word "application," not "claim," courts need not assess the nature of the petitioner's claims so long as he challenges a new judgment. *Id.* at 330–36 (majority opinion).

*King v. Morgan* extended *Magwood* to challenges to a *conviction*. 807 F.3d 154 (6th Cir. 2015). After his conviction in an Ohio court, King unsuccessfully sought federal habeas relief. *Id.* at 156. The trial court subsequently vacated his sentence, but when he received a higher minimum prison term after resentencing, he turned to the federal courts once more. *Id.* Like

Magwood, King had obtained an intervening judgment between his two habeas petitions. But unlike Magwood, his second-in-time petition raised challenges to his sentence and his conviction, even though he had received only a new sentence (rather than a new trial) in the interim. *Id.* at 157. King's petition, we held, was not second or successive under *Magwood*'s "judgment-based" approach, prohibiting us from slicing King's "application" into distinct "claims" and thus from assessing whether each one challenged his conviction or his sentence. *Id.*; *see Magwood*, 561 U.S. at 331; *see also Askew v. Bradshaw*, 636 F. App'x 342, 346–50 (6th Cir. 2016). Instead, we treated King's application—his entire application—as the first one to challenge his new judgment, which meant he did not have to meet the second or successive requirements.

Stansell asks us to take *Magwood* and *King* one step further. The common thread in *Magwood* and *King* is that both cases involved petitioners whose entire sentences were invalidated and who received full resentencing proceedings. *See Magwood*, 561 U.S. at 326; *King*, 807 F.3d at 156. Yet Stansell's sentence was only partially vacated (to the extent it did not include a term of post-release control), and he was only partially resentenced (to impose that term). Does this partial resentencing create an intervening judgment that permits Stansell to raise challenges to his (undisturbed) conviction, his (undisturbed) term of incarceration, and his (new) term of post-release control? Yes.

"Final judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212 (1937); *see Burton v. Stewart*, 549 U.S. 147, 156 (2007). The sentence that matters in a habeas case, *Magwood* tells us, is the one "pursuant to" which an individual is held "in custody." 561 U.S. at 332 (quotation omitted); *see* 28 U.S.C. § 2254(a), (b)(1). And an individual is "in custody" for habeas purposes when he is "in actual, physical custody in prison or jail" *or* when he is subject to "significant" post-release "restraints on [his] liberty" that are "not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 238, 240, 242 (1963); *see Hensley v. Mun. Court*, 411 U.S. 345, 351 (1973). Individuals subject to post-release control, like individuals subject to supervised release in the federal system, satisfy the "in custody" requirement. *See, e.g., United States v. Sandles*, 469 F.3d 508, 517–18 (6th Cir. 2006); *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995).

Before his resentencing, the judgment that kept Stansell "in custody" was a term of imprisonment ranging from twenty years to life. After his resentencing, the judgment that kept Stansell "in custody" was a term of imprisonment ranging from twenty years to life *plus* five years of post-release control. *See Jones*, 371 U.S. at 238–43. Because a new custodial sentence means a new judgment for purposes of § 2254, Stansell's partial resentencing restarted the second or successive count.

As we see it, there are three plausible alternatives to this approach, but none comports with *Magwood* or *King*. One possibility, urged by the State, is that only a full resentencing results in a new judgment. This theory would require those who are partially resentenced to meet the second or successive requirements. But the Court has told us that the sentence *is* the judgment in a criminal case, *see Burton*, 549 U.S. at 798–99, meaning that any change to the custodial sentence necessarily changes the judgment "pursuant to" which an individual is held "in custody," *see* 28 U.S.C. § 2254(a), (b)(1). We said as much in *King*, noting that *Magwood*'s "judgment-based reasoning naturally applies to all new judgments, whether they capture new sentences or new convictions or merely reinstate one or the other." 807 F.3d at 157. Stansell's revised custodial sentence "capture[s]" his newly imposed period of post-release control, along with his "reinstate[d]" term of imprisonment and his underlying conviction. *Id.* That means it is a new judgment, which reopens challenges to any aspect of that judgment, whether related to the conviction, the sentence, or both.

A second alternative would characterize the imposition of post-release control as a technical amendment, the sort of ministerial change that does not alter the substance of Stansell's sentence and thus does not create a new judgment. But calling post-release control a technical correction does not make it so. If an individual's sentence does not include post-release control, he is free from the State's oversight when his term of imprisonment expires. *See State v. Holdcroft*, 1 N.E.3d 382, 389 (Ohio 2013). A sentence with post-release control, by contrast, "significantly confine[s] and restrain[s] his freedom" upon his release. *Jones*, 371 U.S. at 243. The parole board may tell him where to live (in "a community-based correctional facility" or "a halfway house"), restrict his movement (by placing him under "house arrest" or imposing "a term of electronic monitoring"), subject him to "drug and alcohol use monitoring, including

random drug testing," or require him to participate in "education or training" programs. Ohio Rev. Code §§ 2929.16–.17; *see id.* §§ 2967.01(N)–(O), 2967.28(D)(1). The parole authority may sanction individuals who violate conditions of post-release control, in some cases by sending them back to prison for up to nine months per violation (and for up to one-half of their original prison terms in total, which, for someone like Stansell, could mean ten years of additional prison time). *Id.* § 2967.28(D)(1), (F)(3).

The centrality of post-release control to Ohio's sentencing scheme may explain why the General Assembly has ordered courts to inform defendants of their term of post-release control at sentencing. *Id.* § 2929.19(B)(2)(c)–(e). It may explain why, for a time, the Ohio Supreme Court vacated defendants' entire sentences and ordered complete resentencing if the trial court failed to comply with that legislative mandate. *E.g.*, *State v. Bezak*, 868 N.E.2d 961, 963–64 (Ohio 2007), *overruled in relevant part by State v. Fischer*, 942 N.E.2d 332 (Ohio 2010). And it may explain why the Ohio Supreme Court has held that a sentence that incorrectly omits post-release control may be corrected at any time during the inmate's prison term, even if the standard appeal period has run. *Fischer*, 942 N.E.2d at 339–41; *see Holdcroft*, 1 N.E.3d at 387–89. That court has summed up its holdings in this area by noting that "[t]he failure to impose a statutorily mandated period of postrelease control is more than [an] administrative or clerical error. It is an act that lacks both statutory and constitutional authority." *Fischer*, 942 N.E.2d at 339–40. Given the significant restraints that come with this period of state supervision, we agree. When a court alters a sentence to include post-release control, it substantially and substantively changes the terms under which an individual is held "in custody." 28 U.S.C. § 2254(a), (b)(1). That means it has created a new judgment for purposes of the second or successive assessment.

That leaves a third way to think about this case. Perhaps we could divide Stansell's sentence into segments. The trial court imposed his term of imprisonment in 1998 and never vacated it. To the extent he challenges his imprisonment, we might say he is challenging the same judgment that he contested in his first habeas petition, meaning he must meet the second or successive requirements. To the extent he challenges his term of post-release control, however, he is challenging a new judgment imposed in 2014, meaning the second or successive strictures do not come into play. In the context of a statute of limitations, we adopted this approach in

*Bachman v. Bagley*, 487 F.3d 979 (6th Cir. 2007), where we interpreted a section of the federal habeas statute that provides for the limitations period to begin running when the state "judgment bec[o]me[s] final." 28 U.S.C. § 2244(d)(1)(A); *see Mackey v. Warden*, 525 F. App'x 357, 362–63 (6th Cir. 2013) (per curiam). We held that *most* of the petitioner's judgment became final in 1997, but a 2004 amendment to his sentence reopened the limitations period for challenges *to the amended portion*. 487 F.3d at 983–85.

The problem is, the federal habeas statute speaks of one "judgment," not many, per term of custody. 28 U.S.C. § 2254(a), (b)(1); *cf. Rashad v. Lafler*, 675 F.3d 564, 568 (6th Cir. 2012). That singular noun is consistent with *Magwood*'s understanding of the word "application," which suggests that each habeas application corresponds to one, just one, judgment, namely the judgment that authorizes the petitioner's current custody. *See* 561 U.S. at 330–36. Extending *Bachman* to this case would require us to split a single judgment into multiple mini-judgments, each of which would serve as a distinct baseline for purposes of the second or successive inquiry. We then would have to assess each claim in a habeas petition separately, determining whether it attacked the reinstated portion of the judgment or the newly imposed portion, and we would have to subject the former claims to the second or successive requirements while exempting the latter from them. (We might have to split habeas petitions even more finely, dividing a single claim that attacks both parts of the judgment into two distinct claims, only one of which would have to overcome the second or successive bar. *See King*, 807 F.3d at 158.) This is the sort of claim-by-claim analysis that *Magwood* condemns. *See* 561 U.S. at 330–36. Because we must apply the term "second or successive" to the application as a whole, not to the individual claims within it, *Magwood* precludes us from adopting *Bachman*'s approach in the second or successive context. None of this should be taken to call *Bachman* into doubt. All that this decision and all that *King* attempt to do is try to apply *Magwood* faithfully in the second-or-successive context. These decisions, and most importantly *Magwood*, do not answer the distinct statute-of-limitations question raised in *Bachman*.

One might wonder whether our holding is consistent with the purposes of the Antiterrorism and Effective Death Penalty Act, which "codifie[d] some of the pre-existing limits on successive petitions" and added new ones that "further restrict[] the availability of relief to

habeas petitioners." *Felker*, 518 U.S. at 664. If Stansell's petition would have been dismissed as second or successive based on the "abuse of the writ" principles that governed before the 1996 law took effect, and if a judgment-based approach permits him to file it, haven't we interpreted the federal habeas statute to *lessen* the burden on some successive applicants? *See McCleskey v. Zant*, 499 U.S. 467, 479–89 (1991). In a word, yes. But *Magwood* rejected this same argument when it permitted the applicant to file his petition without meeting the second or successive requirements. 561 U.S. at 334–35, 337. So did *King*. 807 F.3d at 159–60. While the statute might have made it more difficult across the board for applicants to file successive petitions, that does not mean that *every* petition barred as an abuse of the writ must also be barred by the new requirements. The statute might have lowered the barrier for a few applicants (those challenging new judgments) and raised it for many others (those challenging old ones), resulting in fewer successive applications overall. That is the conclusion to which the statute's text leads, and that is the conclusion the Supreme Court reached in *Magwood*. 561 U.S. at 334–35, 341–42.

Any fear of "abusive claims," moreover, "is greatly exaggerated" given the number of other procedural obstacles that limit habeas relief. *Id.* at 340 (quotation omitted). Petitioners will still have to comply with procedural default and exhaustion requirements. *Id.*; *see* 28 U.S.C. § 2254(b). And if, after the entry of an intervening judgment, they bring the same claims they raised in an earlier petition, "[i]t will not take a court long to dispose of [those] claims where [it] has already analyzed the legal issues" in an earlier decision. 561 U.S. at 340 n.15.

We close with a few caveats. First, we do not imply that *any* change to a petitioner's sentence reopens the door to successive habeas filings; we hold only that a partial resentencing that results in the imposition of post-release control is the *type* of change that creates a new judgment for purposes of the second or successive bar. That is because this type of change alters the sentence "pursuant to" which the petitioner is "in custody." 28 U.S.C. § 2254(a), (b)(1); *see Magwood*, 561 U.S. at 332. We need not decide what happens if a state court alters the non-custodial aspects of the petitioner's sentence (by vacating a restitution obligation or imposing a fine, for example); or if it vacates the sentence on one of the petitioner's counts but continues to hold him in custody under the sentence imposed on another; or if, assuming that the same second

or successive rules apply in the federal context, a court grants a motion to reduce an applicant's sentence due to a guidelines amendment or substantial assistance. *Compare Kramer v. United States*, 797 F.3d 493, 501–02 (7th Cir. 2015) (vacating conviction on one count of a multi-count indictment does not reset § 2255's second or successive count with respect to the other convictions and sentences), *and In re Lampton*, 667 F.3d 585, 588–90 (5th Cir. 2012) (same), *with Wentzell v. Neven*, 674 F.3d 1124, 1127–28 (9th Cir. 2012) (reaching the opposite result in a § 2254 case), *and Johnson v. United States*, 623 F.3d 41, 44–46 (2d Cir. 2010) (same, in the § 2255 context); *see also* 18 U.S.C. § 3582(b), (c) (permitting courts to "modify a term of imprisonment" in certain circumstances, including guidelines amendments and substantial assistance motions, but noting that the original "judgment of conviction . . . constitutes a final judgment for all other purposes"); Fed. R. Crim. P. 35(b); *United States v. Jones*, 796 F.3d 483, 485–87 (5th Cir. 2015); *White v. United States*, 745 F.3d 834, 836–37 (7th Cir. 2014); *cf. Patterson v. Sec'y, Fla. Dep't of Corr.*, 812 F.3d 885, 887–92 (11th Cir. 2016) (§ 2254 habeas application was not second or successive where state court had vacated a portion of the petitioner's sentence but left the term of imprisonment intact); *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1278–81 (11th Cir. 2014) (per curiam) (§ 2254 habeas application was not second or successive where state court had reduced the mandatory minimum prison term for petitioner's offense but had maintained the same overall term of imprisonment).

Second, we note that Stansell says, in his motion to file a second or successive application, that he has been "resentenced twice since" his first habeas petition was denied. Pet'r Motion 5. His theory seems to stem from the trial court's statement, during the original sentencing hearing in 1998, that Stansell would not have to pay any costs. Yet the judgment entered after the 1998 hearing, as well as the one entered after the 2014 partial resentencing, contradicted this statement, ordering Stansell to pay costs. When he brought the discrepancy to the trial court's attention, it corrected the clerical error by issuing a new journal entry (the document that memorializes final judgments in Ohio) in July 2015. *See* Ohio R. Crim. P. 32(C), 36. The court also designated the new document as a "nunc pro tunc" entry, Resp't App. 223 (Ex. 36), indicating it had "retroactive legal effect" and was to be treated as if it had been entered at the time of the 2014 resentencing, *Black's Law Dictionary* 1237 (10th ed. 2014).

Stansell regards the July 2015 journal entry as a new judgment, but we disagree.  That entry simply corrected the court's records to correspond to the sentence announced at the 1998 hearing.  The court used the nunc pro tunc designation to clarify that it was not altering the judgment in Stansell's case and to indicate that this judgment had remained the same ever since his partial resentencing to impose post-release control.  When courts use nunc pro tunc entries in this manner—to correct clerical errors that result in a discrepancy between the court's oral pronouncements and its paper records—we do not regard the corrected entries as new judgments for purposes of the second or successive requirements.  To hold otherwise would turn those requirements into a game of "I Spy," where the petitioner best able to catch the court's technical errors will earn himself a free pass (maybe many free passes) into federal court.  *See Marmolejos v. United States*, 789 F.3d 66, 70–72 (2d Cir. 2015) (§ 2255); *see also, e.g., May v. Kansas*, 562 F. App'x 644, 645–46 (10th Cir. 2014) (per curiam) (§ 2254); *United States v. Cano*, 558 F. App'x 936, 941 n.6 (11th Cir. 2014) (per curiam) (§ 2255).

## III.

For these reasons, we deny Stansell's motion to file a second or successive habeas petition as unnecessary and transfer his petition to the district court for proceedings consistent with this opinion.