RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0181p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

IN RE: RAYMOND TIBBETTS,

*Movant.*

No. 17-3609

On Motion to Remand.
No. 1:14-cv-00602—Michael R. Merz, District Judge.

Decided and Filed:  July 24, 2017[*]

Before:  BATCHELDER, MOORE, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

_____

**ON MOTION:**  Erin Gallagher Barnhart, FEDERAL PUBLIC DEFENDER, Columbus, Ohio, for Movant.  **ON RESPONSE:**  Brenda S. Leikala, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for the State of Ohio.

The court delivered a PER CURIAM order.  MOORE, J. (pp. 8–13), delivered a separate dissenting opinion.

_____

**ORDER**

_____

Petitioner Raymond Tibbetts filed a petition for a writ of habeas corpus, which the United States District Court for the Southern District of Ohio determined was a second-or-successive habeas petition and transferred to our court.  The district court properly concluded that Tibbetts's petition is second or successive, and Tibbetts's motion to remand is therefore DENIED.  Because

---

[*]This decision was originally filed as a panel order on July 24, 2017.  The court has now designated the order for full-text publication.

Tibbetts filed a second-or-successive habeas petition and cannot meet the requirements of 28 U.S.C. § 2244(b), his habeas petition is DISMISSED.

On August 27, 1998, Tibbetts was convicted of one count of murder, three counts of aggravated murder, and one count of aggravated robbery and was sentenced to death in the Court of Common Pleas in Hamilton County, Ohio. On July 5, 2001, the Supreme Court of Ohio affirmed Tibbetts's convictions and sentences. *State v. Tibbetts*, 749 N.E.2d 226 (Ohio 2001). Tibbetts filed his first petition for a writ of habeas corpus on February 18, 2003, which asserted, in Claim 14, that his "constitutional rights were violated by the administration of the death penalty by lethal injection in the state of Ohio." The Magistrate Judge determined that claim to be meritless because "[n]o court has found this method of execution to be constitutionally impermissible." Tibbetts did not object to this ruling, and therefore abandoned that claim. The district court adopted the Magistrate Judge's report and recommendation and denied Tibbetts's first habeas petition. *Tibbetts v. Bradshaw*, No. 1:03-CV-114, 2006 WL 871197 (S.D. Ohio Mar. 29, 2006). This court ultimately affirmed the district court's order denying Tibbetts's first habeas petition. *See Tibbetts v. Bradshaw*, 633 F.3d 436 (6th Cir. 2011).

Tibbetts filed his second petition for a writ of habeas corpus on July 23, 2014. The second habeas petition states ten grounds for relief, all relating to Tibbetts's central claim that his execution by lethal injection under Ohio law violates the Eighth and Fourteenth Amendments. Tibbetts sought to amend his second habeas petition several times. The most recent motion to amend was filed on March 8, 2017, and sought to substitute four grounds addressing Ohio's recent lethal injection protocols for the ten grounds originally stated in his second habeas petition.

After extensive litigation, the district court determined that this habeas petition and the motion to amend was a second-or-successive petition, held that it lacked jurisdiction to consider the petition, and transferred it to this court. Tibbetts has now filed a motion to remand the case to the district court, arguing that his second habeas petition is not second or successive because his new claims were unripe when he filed his initial habeas petition.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the authority of federal courts to grant relief to individuals who previously filed a habeas petition and requires petitioners challenging state court judgments to seek authorization in a federal appeals court before filing a "second or successive" petition in district court.[1]  28 U.S.C. § 2244(b); *In re Stansell*, 828 F.3d 412, 414 (6th Cir. 2016).  A second-or-successive habeas petition stating claims that were presented in a prior petition "shall be dismissed." § 2244(b)(1). To receive an order authorizing the district court to consider a second-or-successive habeas petition raising new claims, the petitioner must make a prima facie showing of: (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or (2) newly discovered evidence which could not have been discovered previously through the exercise of due diligence and which would be sufficient to establish, by clear and convincing evidence, that no reasonable factfinder would have found the petitioner guilty.  § 2244(b)(2); *Tyler v. Anderson*, 749 F.3d 499, 508 (6th Cir. 2014).

Tibbetts concedes that his second petition (including the claims asserted in his proposed amended petition) does not satisfy the requirements stated in 28 U.S.C. § 2244(b).  Tibbetts, however, asserts that § 2244(b) does not apply and that he does not need permission to bring his second habeas petition in the district court.  He argues that his habeas petition, although second-in-time, is not a second-or-successive petition because his new claims were unripe when he filed his initial habeas petition.

"If an application is 'second or successive,' the petitioner must obtain leave from the Court of Appeals before filing it with the district court. . . .  If, however, [the] application [is] not second or successive, it [is] not subject to § 2244(b) at all, and [the] claim [is] reviewable (absent procedural default)." *Magwood v. Patterson*, 561 U.S. 320, 330–31 (2010).  AEDPA does not define the phrase "second or successive."  However, courts generally apply the abuse of the writ doctrine to determine whether a petition is second or successive. *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).  "Under the abuse of the writ doctrine, a numerically second petition is 'second'

---

[1]This case does not raise any issues concerning the propriety of retroactively applying the gate-keeping provisions of the AEDPA to any pre-AEDPA conduct because Tibbetts's initial habeas petition was filed after AEDPA's effective date of April 24, 1996. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 (1994); *In re Sonshine*, 132 F.3d 1133, 1135 (6th Cir. 1997).

when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect." *Id.* (citing *McCleskey v. Zant*, 499 U.S. 467, 489 (1991)).

The United States Supreme Court has further explained that the phrase "second or successive" "must be interpreted with respect to the judgment challenged." *Magwood*, 561 U.S. at 332–33 (citations omitted); *see Stansell*, 828 F.3d at 415. For example, a petition is not second or successive "[i]f an individual's petition is the first to challenge a particular state judgment." *Stansell*, 828 F.3d at 415 (citing *Magwood*, 561 U.S. at 331–33); *see King v. Morgan*, 807 F.3d 154, 156–57 (6th Cir. 2015). Similarly, a petition is not second or successive when it raises a claim that was unripe for review when the first habeas petition was filed. *Panetti v. Quarterman*, 551 U.S. 930, 945–47 (2007) (addressing a second habeas petition raising a *Ford*-based incompetency claim); *In re Jones*, 652 F.3d 603, 605–06 (6th Cir. 2010) (addressing a second habeas petition raising an *ex post facto* claim regarding amendments to Michigan's parole system). A claim is unripe when "the events giving rise to the claim had not yet occurred." *Jones*, 652 F.3d at 605.

Tibbetts's current habeas petition challenges his original state-court judgment, but he argues that he could not have raised his lethal-injection challenge until the state adopted the revised execution protocol in October 2013 or October 2016, because such a claim would not have been ripe. Tibbetts, however, confuses newly arising legal bases, associated with his pending 42 U.S.C. § 1983 claim challenging Ohio's current execution protocol, *see In re: Ohio Execution Protocols*, 860 F.3d 881 (6th Cir. 2017) (en banc), with newly arising circumstances necessary to render his present challenge to his sentence to death by lethal injection ripe. Not only did Tibbetts raise such a general claim in his first habeas petition, none of the newly arising circumstances identified by Tibbetts in his second habeas petition are necessary to a general claim that his sentence to death by lethal injection is unconstitutional. *See In re: Lawrence Landrum*, Case No. 16-3151 (6th Cir. Feb. 13, 2017). Lethal injection became a method of execution in Ohio in 1993 and became the primary method in 2001. *See* Ohio Rev. Code Ann. § 2949.22; *Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2006). Tibbetts had the necessary information to file, and indeed did file, a claim regarding the constitutionality of lethal injection

in his initial habeas petition.  Further, as this court noted in *Adams v. Bradshaw*, 826 F.3d 306, 321 (6th Cir. 2016) (*Adams III*), a challenge to the constitutionality of "lethal injection in general and not a particular lethal-injection protocol" is cognizable in habeas.  However, a challenge to a particular procedure, as Tibbetts's current habeas claims highlighting Ohio's use of midazolam appear to be, is properly brought in an action under 42 U.S.C. § 1983.  *Id.*; *see also Glossip v. Gross*, 135 S. Ct. 2726, 2738 (2015); *Hill v. McDonough*, 547 U.S. 573, 579–80 (2006).

It follows that the circumstances said to affect the ripeness of Tibbetts's challenge to the judgment of sentence itself instead speak to the constitutionality of a particular application of a particular protocol to a particular person.  Such a particular challenge is properly asserted, as Tibbetts has in other litigation, under § 1983.

It is the view of the dissent that Tibbetts raises a claim that his sentence to death by lethal injection as imposed on *him personally* is unconstitutional.  To the extent that Tibbetts raises such a claim, it is still second or successive.  As noted above, a habeas claim is second or successive if it was ripe for review when the first habeas petition was filed.  *Panetti*, 551 U.S. at 947; *see Bowen*, 436 F.3d at 704.  Tibbetts's general and unspecific allegations of physical and psychological ailments are insufficient to overcome this limitation.  Tibbetts alleges that his "history of severe alcohol and heavy drug abuse," his "history of hospitalization," the "effects of his severe childhood trauma and abuse, along with other mental and psychological conditions that have not yet been identified," and other physical or mental characteristics that he "may develop before his execution date or may currently have" increase the risk that he will suffer unconstitutional harm by lethal injection.  But it is indisputable that these physical, mental, and psychological characteristics were known when he filed his first habeas petition.  Also, he fails to explain why unknown or potentially developing ailments are now ripe for a challenge to the constitutionality of his execution by lethal injection when, by his own contention, they were unripe previously.  Tibbetts has not shown that his second habeas petition or his proposed amended petition, to the extent that it challenges the fact and validity of his sentence, was "filed when the claim is first ripe." *Panetti*, 551 U.S. at 947.

In assessing ripeness, the dissent seeks to analogize Tibbetts's allegation of physical and mental characteristics to a *Ford* claim of mental incompetency, citing *Panetti* and *Stewart v.*

*Martinez-Villareal*, 523 U.S. 637 (1998). But the dissent has not cited authority, and we are not aware of any, supporting the analogy. The Eighth Amendment has been interpreted as prohibiting execution of one who is insane—whether the "aim be to protect the condemned from fear and pain without comfort of understanding, or to protect the dignity of society itself from the barbarity of exacting mindless vengeance." *Ford v. Wainwright*, 477 U.S. 399, 410 (1986). In *Panetti*, the Court held that limitations on second-or-successive habeas petitions do not apply to "a *Ford* claim brought in an application filed when the claim is first ripe." *Panetti*, 551 U.S. at 947. We fully agree with *Ford*'s recognition of "the natural abhorrence civilized societies feel at killing one who has no capacity to come to grips with his own conscience or deity." *Ford*, 477 U.S. at 409. But we know of no comparable solicitude toward those who claim not to be well enough *physically* to face execution. And to the extent there *may* be a substantial risk of severe pain and suffering in the particular method of execution to be employed, again, Tibbetts's redress is under § 1983, as in his pending civil rights action.

Moreover, we note that Tibbetts enjoys excellent and zealous representation in these matters. Yet, his arguments in support of remand fall short in critical ways. As *Panetti* recognizes, "last-minute filings that are frivolous and designed to delay executions can be dismissed in the regular course." *Id.* at 946. To be allowed to proceed, a petitioner must make "a threshold preliminary showing." *Id.* at 947. In other words, bald allegations of "physical and mental characteristics" do not suffice. Tibbetts has failed to show his new challenge is "filed when the claim is first ripe," *id.*, as is required to avoid the statutory bar on "second or successive" petitions.**[2]**

Because Tibbetts raised his constitutional challenge to lethal injection in his original habeas petition, and he has not identified practices or procedures from the October 2013 or October 2016 protocols or such other circumstances as would render his instant challenge to the

---

**[2]**The dissent posits that the Sixth Circuit has "authorized" what it calls "intermediate challenges" to lethal injection execution that may be cognizable in habeas and not just in a § 1983 claim, citing *Adams v. Bradshaw*, 826 F.3d 306, 321 (6th Cir. 2016) (*Adams III*). Yet, while the *Adams* court recognized the *possibility* of such a claim, citing *Nelson v. Campbell*, 541 U.S. 637, 644 (2004), it affirmed the denial of habeas relief because petitioner's claim was more appropriately pursued in his ongoing § 1983 litigation. That is the same result we reach here. The allegations of Tibbetts's most recent petition fail to persuade us, despite clever semantics, that his challenge is other than a challenge to a particular application of a particular method of execution to particular person, not a challenge to the validity of his sentence itself.

validity of his sentence newly "ripe," his current petition is second or successive. Further, because Tibbetts concedes that this habeas petition does not satisfy the requirements of § 2244(b), it must be dismissed.

Therefore, Tibbetts's motion to remand is DENIED, and his second-or-successive habeas petition is DISMISSED.

_____

**DISSENT**

_____

KAREN NELSON MOORE, Circuit Judge, dissenting. The district court transferred Raymond Tibbetts's habeas case[1] to this court to determine whether Tibbetts met the requirements to file a second or successive habeas petition. *See* 28 U.S.C. § 2244(b). Tibbetts filed a Motion to Remand arguing that although his habeas petition is second in time, it is not a second or successive petition within the meaning of § 2244(b).[2] In concluding that Tibbetts's petition is second or successive, the majority takes two missteps. First, the majority's order characterizes Tibbetts's claim as "a general claim that his sentence to death by lethal injection is unconstitutional" or "a challenge to a particular procedure," Order at 4, 5, but Tibbetts explicitly states that his "claims are not *per se* challenges to lethal injection" or an "attack [of] Ohio's current execution protocol," Reply to the Warden's Mem. in Opp'n at 3, 5. Tibbetts's argument is that his instant petition is not second or successive precisely because he is not bringing a general, per se challenge to lethal injection or a challenge specific to Ohio's current execution protocol. Second, when it does consider the possibility "that Tibbetts raises a claim that his sentence to death by lethal injection as imposed on *him personally* is unconstitutional," Order at 5, the majority's analysis of this claim errs.

In support of his argument that his habeas petition is not second or successive, Tibbetts argues that there are three ways a condemned inmate can challenge Ohio's execution practice. First, a condemned inmate can bring a habeas case arguing that lethal injection, the only manner of execution permitted by Ohio law, is per se unconstitutional. The Sixth Circuit has authorized

---

[1]Tibbetts's Proposed Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 raises four grounds for relief. First, the State of Ohio cannot constitutionally execute Tibbetts because Ohio law allows for execution only by lethal injection, and executing Tibbetts by lethal injection would violate the Eighth Amendment. R. 57-1 (Proposed Amended Habeas Pet. at 37) (Page ID #889). Second, executing Tibbetts by lethal injection would violate the Due Process Clause or the Privileges or Immunities Clause of the Fourteenth Amendment. *Id.* at 58 (Page ID #910). Third, executing Tibbetts by lethal injection would violate the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 66 (Page ID #918). Fourth, Ohio's violations of federal law are a fundamental defect in its execution process, and federal law preempts Ohio's execution laws. *Id.* at 79 (Page ID #931).

[2]Tibbetts concedes that if this court determines that his petition is second or successive, he does not meet § 2244(b)'s requirements for filing a second or successive petition. *See* Mot. to Remand at 2 n.1.

habeas claims raising per se challenges to lethal injection, *see Adams v. Bradshaw*, 826 F.3d 306, 321 (6th Cir. 2016), but the Sixth Circuit and the Supreme Court have also held that lethal injection is not per se unconstitutional, *see Glossip v. Gross*, 135 S. Ct. 2726, 2739 (2015); *Scott v. Houk*, 760 F.3d 497, 512 (6th Cir. 2014) (citing *Baze v. Rees*, 553 U.S. 35 (2008)). Tibbetts brought, and lost, a per se challenge to lethal injection in his first habeas petition. *See* Reply to the Warden's Mem. in Opp'n at 4 (citing R. 61 (Mem. Op. & Transfer Order at 12) (Page ID #1025)).

Second, a condemned inmate can bring a § 1983 case arguing that a specific execution protocol is unconstitutional. The Supreme Court has authorized § 1983 challenges to specific execution protocols. *See Hill v. McDonough*, 547 U.S. 573, 579–80 (2006); *Nelson v. Campbell*, 541 U.S. 637, 644 (2004). Tibbetts has already brought, and lost, a challenge to Ohio's current execution protocol. *See In re: Ohio Execution Protocol Litig.*, No. 17-3076, 2017 WL 2784503, at *8 (6th Cir. June 28, 2017) (en banc).

Third, according to Tibbetts's motion to remand his habeas petition, a condemned inmate can bring a habeas case arguing that it would be unconstitutional for Ohio to use lethal injection to execute him because of Ohio's inability to constitutionally implement lethal injection protocols and his individual characteristics. This intermediate challenge is neither a per se challenge to lethal injection nor a specific challenge to a particular execution protocol, but a challenge based on Ohio's historic execution practices and the inmate's physical and mental attributes. Tibbetts's instant habeas petition raises this third, intermediate challenge by arguing that "*his* death sentence is invalid because the State of Ohio, by operation of its own state law, can *only* use lethal injection to carry out Tibbetts'[s] sentence, but *Ohio* cannot constitutionally carry out a lethal injection execution *on Tibbetts* due to his unique, individual characteristics and Ohio's inability to adopt or implement any constitutionally sufficient execution protocol." Reply in Support of Mot. to Remand at 6. The district court posited that this court has authorized such intermediate challenges in habeas cases. R. 64 (Decision & Order at 5) (Page ID #1053) (citing *Adams v. Bradshaw*, 826 F.3d 306, 321 (6th Cir. 2016)) ("The Sixth Circuit's ultimate conclusion that a habeas petition posing a general enough challenge to lethal injection (i.e., it

will always be unconstitutional for Ohio to execute this particular petitioner by lethal injection) but not too general (i.e. lethal injection is unconstitutional in all circumstances) is cognizable").

I agree with Tibbetts and the district court that this court has authorized condemned inmates to bring intermediate ("general enough . . . but not too general") challenges to lethal injection, but I disagree that habeas is always the proper procedural vehicle for these challenges. Whether § 1983 or habeas is the appropriate procedural vehicle depends on the factual predicate of the constitutional challenge. Challenges to Ohio's implementation of lethal injection can be brought under § 1983, whereas challenges to death sentences related to an individual's mental or physical characteristics can be brought as habeas cases.

This court previously has held that § 1983 is the proper procedural vehicle for challenges to lethal injection that depend on evidence about a particular lethal injection protocol or Ohio's inability to administer lethal injection in a constitutional manner. *See Frazier v. Jenkins*, 770 F.3d 485, 505 (6th Cir. 2014) ("Frazier admits that the United States Supreme Court . . . held that execution by lethal injection is not per se unconstitutional, but he contends that 'the implementation of the method of execution could implicate the Eighth Amendment prohibition against cruel and unusual punishment.' . . . Frazier is a party to an ongoing action, filed under 42 U.S.C. § 1983, challenging Ohio's lethal-injection regime. We think that that litigation is the proper avenue for Frazier to bring this constitutional challenge.") (internal citations omitted); *Scott*, 760 F.3d at 512 ("As the law currently stands, there is no merit to Scott's assertion that his sentence is void because lethal injection is unconstitutional. Simply put, lethal injection does not violate the Constitution per se, and Scott acknowledges as much in his brief. Therefore, in order to obtain relief from his sentence, Scott would first have to gather facts showing that Ohio is unable to administer lethal injection in a constitutionally permissible manner. And this is precisely the type of discovery that Scott can pursue in his § 1983 litigation.") (*citing inter alia Baze*, 553 U.S. 35). *Scott*, in particular, undermines Tibbetts's argument that habeas is the proper procedural vehicle insofar as his case depends on evidence about Ohio's previous implementation of lethal injection protocols. *See Scott*, 760 F.3d at 512.

On the other hand, habeas is the proper procedural vehicle for challenges to lethal injection that depend on particular physical or mental characteristics of the person to be

executed, such as their competency. *See Panetti v. Quarterman*, 551 U.S. 930, 943 (2007); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643 (1998). Of particular relevance to Tibbetts's case, the Supreme Court also established that a second in time petition raising such a claim is not second or successive within the meaning of § 2244(b) because a challenge to a death sentence based on an individual's physical and mental characteristics at the time of execution is not ripe until the execution is imminent. *See Panetti*, 551 U.S. at 945; *Martinez-Villareal*, 523 U.S. at 644–45; *see also generally In re: Jones*, 652 F.3d 603, 605 (6th Cir. 2010) (explaining that a numerically second habeas petition is not second or successive within the meaning of § 2244(b) "to the extent it asserts claims whose predicates arose after the filing of the original petition").

In Tibbetts's first ground for relief, he argues that his "individual physical and/or mental characteristics and conditions indicate that employing any Ohio lethal-injection protocol to execute him will subject him to substantial risk of serious harm." R. 57-1 (Proposed Amended Habeas Pet. at 55) (Page ID #907). According to his Proposed Amended Petition, Tibbetts's "individual physical and/or mental characteristics" include severe alcohol and drug abuse; history of hospitalizations requiring IV treatment; liver damage; history of head trauma; psychiatric disorders; and "additional" characteristics that Tibbetts "may develop before his execution date or may currently have." *Id.* at 56–57 (Page ID #908–09). Like a claim that a petitioner is not competent to be executed, a claim that a petitioner will be exposed to a substantial risk of serious harm because of the state of his veins (or head or liver) is ripe when an execution is imminent.

The majority's conclusion that these claims are not newly ripe when an execution is imminent ignores the reasoning of *Panetti* and *Martinez-Villareal*. *Martinez-Villareal* reasoned that if an "execution was not imminent" a petitioner's "competency to be executed could not be determined at that time." 523 U.S. at 644–45. *Panetti* reasoned that incompetency claims could not be adjudicated before an execution was imminent because "[a]ll prisoners are at risk of deteriorations in their mental state" and the relevant question is the prisoner's mental state at the time of execution. 551 U.S. at 943. The reasoning in *Panetti* and *Martinez-Villareal* applies equally to Tibbetts's claims about his physical and psychological condition. The relevant factual predicates for Tibbetts's claim are his physical and mental characteristics at the time of

execution, not his physical and mental characteristics at some time months or years before the scheduled execution. As *Panetti* and *Martinez-Villareal* recognize, an individual's physical and mental characteristics can change (and may be particularly likely to change during incarceration). *See Panetti*, 551 U.S. at 943. The proper time for a petitioner to raise claims objecting to execution or an execution method based on his mental or physical characteristics is when the execution is imminent.

The district court must determine in the first instance whether Tibbetts has made a colorable claim that any of his individual characteristics would expose Tibbetts to a substantial risk of serious harm. As a consequence, the majority's conclusion that Tibbetts's "bald allegations . . . do not suffice" is irrelevant to the question we have been asked to decide. Order at 6. True enough that *Panetti* said that "last-minute filings that are frivolous and designed to delay executions can be dismissed in the regular course." 551 U.S. at 946. But "dismissal in the regular course" is the province of the district court, not this court. This court has not been asked whether Tibbetts's claims are meritorious. This court has been asked only to assess whether all of Tibbetts's claims are second or successive, and consequently procedurally barred. I would hold that they are not.

To the extent that Tibbetts alleges that "*Ohio* cannot constitutionally carry out a lethal injection execution" due to "Ohio's inability to adopt or implement any constitutionally sufficient execution protocol," Reply in Support of Mot. to Remand at 6, Tibbetts must make this allegation in a § 1983 case. On the other hand, to the extent that Tibbetts alleges that Ohio cannot constitutionally carry out lethal injection "*on Tibbetts* due to his unique, individual characteristics," *id.*, Tibbetts may make this allegation in a habeas petition. And like a *Ford* claim, the claim that Ohio cannot constitutionally execute Tibbetts by lethal injection because of Tibbetts's physical and mental characteristics is not ripe until his execution is imminent. In my view, Tibbetts's second in time habeas petition alleging that Ohio cannot execute him by lethal injection because of his unique characteristics is not a second or successive petition within the meaning of § 2244(b). Accordingly, remand to the district court for further proceedings consistent with this opinion is appropriate.

The majority does not fully respond to Tibbetts's arguments that intermediate challenges to lethal injection are viable and cognizable in habeas. To the extent that the majority does respond to these arguments, its reasoning runs counter to *Panetti* and *Martinez-Villareal*. I respectfully dissent.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk