**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| URIEL GONZALEZ, *Petitioner-Appellant*, | No. 14-56855 |
| v. | D.C. No. 2:13-cv-05248-PA-PLA |
| STUART SHERMAN, *Respondent-Appellee.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted June 8, 2017
Pasadena, California

Filed October 11, 2017

Before: Stephen Reinhardt and Alex Kozinski, Circuit
Judges, and Terrence Berg,[*] District Judge.

Opinion by Judge Reinhardt

---

[*] The Honorable Terrence Berg, United States District Judge for the
Eastern District of Michigan, sitting by designation.

## SUMMARY**

### Habeas Corpus

Reversing the district court's dismissal of a California state prisoner's habeas corpus petition and remanding, the panel held that a state court's alteration of the number of presentence credits to which a prisoner was entitled under California law constitutes a new, intervening judgment which renders a subsequent federal habeas petition a first rather than second or successive petition under 28 U.S.C. § 2244(b)(1).

### COUNSEL

Vivian Fu (argued), San Francisco, California, for Petitioner-Appellant.

Stephanie C. Brenan (argued) and Kenneth C. Byrne, Supervising Deputy Attorneys General; Lance E. Winters, Senior Assistant Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Los Angeles, California; for Respondent-Appellee.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

REINHARDT, Circuit Judge:

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner is ordinarily prohibited from filing more than one federal petition for writ of habeas corpus challenging his conviction or sentence. 28 U.S.C. § 2244(b). We have previously held, however, that when a state trial court amends a prisoner's judgment of conviction, it creates a new, intervening judgment which a prisoner may challenge in a federal habeas petition without that petition being denied as "second or successive" under AEDPA. *See Wentzell v. Neven*, 674 F.3d 1124, 1125 (9th Cir. 2012); *see also Magwood v. Patterson*, 561 U.S. 320, 341–42 (2010) (holding that a new judgment renders a second-in-time petition challenging that judgment not second or successive). The question in this case is whether a state court's alteration of the number of presentence credits to which a prisoner was entitled under California law constitutes a new, intervening judgment under *Wentzell*. We hold that it does.

## BACKGROUND

Uriel Gonzalez was convicted of four counts of attempted murder in 2001. As part of its determination of guilt, the jury found true firearm and gang allegations. Gonzalez was sentenced to serve a term in state prison of 65 years to life. At sentencing, the Superior Court judge determined that Gonzalez was entitled to 464 days of time served credits and 69 days of good time credits for a total of 533 days to be credited against the sentence imposed. On direct appeal, the California Court of Appeal affirmed the judgment. The California Supreme Court denied review on October 23, 2002.

Gonzalez filed a federal petition for writ of habeas corpus on October 20, 2011. While Gonzalez's federal habeas petition was pending, he filed a state petition for postconviction relief in Superior Court on November 7, 2011. Notice of Lodging at 2, *Gonzalez v. Trimble*, No. CV 11-8690-PA (PLA), 2013 WL 571760 (C.D. Cal. Feb. 12, 2013). His state petition was denied on December 14, 2011. *Id.* Gonzalez filed a "Request for Reconsideration" with the Superior Court on December 23, 2011, which was denied on December 30, 2011. *Id.* On March 22, 2012, Gonzalez filed a state habeas petition in the California Court of Appeal, which was denied on April 5, 2012. *Id.* at 3. He then filed a state petition with the California Supreme Court on February 14, 2012, which was denied on May 9, 2012. The district court denied Gonzalez's federal habeas petition with prejudice as time-barred on February 12, 2013.

On April 10, 2013, Gonzalez filed a motion for correction of the record in the California Superior Court pursuant to California Penal Code section 1237.1, contending that he was entitled to 482 days in time served credits and 72 days in good time credits for a total of 554 days of presentence credit, instead of the 533 days that the trial court had awarded him. On April 24, 2013, the court granted his motion, ordered Gonzalez's credits amended, and directed that an amended abstract of judgment be prepared reflecting the additional credit granted. The amended abstract of judgment was filed April 26, 2013. Gonzalez then filed a motion for reconsideration of the court's order, requesting a formal resentencing hearing and a motion for correction of the record in the trial court. The Superior Court denied the motion, the Court of Appeal denied the appeal, and the California Supreme Court denied review.

On June 6, 2013, Gonzalez filed a new federal habeas petition in district court challenging both his conviction and sentence. *See* Petition for Writ of Habeas Corpus by a Person in State Custody, *Gonzalez v. Brazelton*, No. 2:13-cv-04053-PA-PLA (C.D. Cal. June 6, 2013). The district court summarily dismissed the petition without prejudice as second or successive on June 13, 2013. *See* Order Dismissing Successive Petition Without Prejudice, *Gonzalez v. Brazelton*, No. 2:13-cv-04053-PA-PLA (C.D. Cal. June 13, 2013).

Gonzalez filed an identical federal habeas petition on July 19, 2013, along with a motion for the district court to take judicial notice of this circuit's decision in *Wentzell*. The district court dismissed the petition without prejudice as an unauthorized second or successive petition on October 29, 2014 based on the report and recommendation of the magistrate judge. In his report and recommendation, the magistrate judge rejected the argument that the Superior Court's amendment to the number of credits due to petitioner was an intervening judgment, stating that the court was "merely fixing a computational error," and that there was "nothing to indicate that the modification of credits had any effect on the finality of petitioner's judgment of sentence." The magistrate judge reasoned that this conclusion was supported by the fact that, although not expressly labeled as such, "it appears that the order operates as [a 'nunc pro tunc' order]" because it directed the award of custody credits amended as of the original sentencing date, which order the magistrate judge called "retroactive." The court interpreted *Magwood* and *Wentzell* as limited to "the finality of petitioner's judgment of sentence," and found that Gonzalez's initial sentence remained final. The parties agreed that for purposes of AEDPA, the July 19 petition is

the first federal petition filed after the Superior Court amended Gonzalez's credits.

We granted a certificate of appealability with respect to whether the district court properly dismissed appellant's petition as second or successive.

## STANDARD OF REVIEW

We review de novo the district court's determination that a petition is "second or successive" under AEDPA. *Wentzell v. Neven*, 674 F.3d 1124, 1126 (9th Cir. 2012).

## DISCUSSION

### I.

AEDPA places strict limitations on the ability of a petitioner held pursuant to a state judgment to file a second or successive federal petition for writ of habeas corpus. A claim in a second or successive petition that was presented in a prior application "shall be dismissed." 28 U.S.C. § 2244(b)(1). Likewise, a claim presented in a second or successive petition that was not presented in a prior application "shall be dismissed unless" certain criteria are met. *Id.* § 2244(b)(2). Before a petitioner can file a second or successive petition, he must obtain leave from the Court of Appeals. *Id.* § 2244(b)(3).

The phrase "second or successive," however, "does not simply 'refe[r] to all § 2254 applications filed second or successively in time.'" *Magwood v. Patterson*, 561 U.S. 320, 332 (2010) (alteration in original) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007)). In *Magwood*, the Supreme Court held that "both § 2254(b)'s text and the relief it provides indicate that the phrase 'second or successive'

must be interpreted with respect to the judgment challenged." 561 U.S. at 332–33. As a result, "where . . . there is a 'new judgment intervening between the two habeas petitions,' an application challenging the resulting new judgment is not 'second or successive' at all." *Id.* at 341–42 (citation omitted).

*Magwood* concerned an Alabama state prisoner who had been sentenced to death for murder. *Id.* at 323. Magwood filed a federal petition for habeas corpus arguing that the trial court failed to consider statutory mitigating circumstances regarding his mental state, and the district court vacated his sentence and conditionally granted the writ. *Id.* at 326. The state trial court held a new sentencing proceeding, in which the trial court considered Magwood's mental state but nonetheless sentenced him to death a second time. *Id.* The trial court emphasized that "the new 'judgment and sentence [were] the result of a complete and new assessment of all the evidence, arguments of counsel, and law.'" *Id.* (alteration in original) (quoting the state trial court sentencing proceedings). After exhausting state remedies, Magwood filed a federal habeas petition challenging his new death sentence. *Id.* at 327–28. The district court sua sponte considered whether the petition was second or successive under 28 U.S.C. § 2244 and concluded that it was not. *Id.* at 328. The Eleventh Circuit concluded that it was and reversed. *Id.* at 329.

The Supreme Court then reversed the court of appeals, holding that Magwood's petition was not second or successive because it challenged his second death sentence rather than his first: "Because Magwood's habeas application challenges a new judgment for the first time, it is not 'second or successive' under § 2244(b)." *Id.* at 323–24. The Court relied on "[t]he requirement of custody *pursuant*

*to a state-court judgment*" included in AEDPA's text, which "distinguishes § 2254 from other statutory provisions authorizing relief from constitutional violations." *Id.* at 333. The Court determined that an application for writ of habeas corpus by a state prisoner is inextricably bound to the judgment pursuant to which the prisoner is being held because "[a] § 2254 petitioner is applying for something: his petition 'seeks *invalidation* (in whole or in part) *of the judgment* authorizing the prisoner's confinement.'" *Id.* at 332 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005)). Thus, the Court concluded, when a petitioner receives a new sentence and challenges that new sentence, his petition is not second or successive. Rather, the petitioner is challenging the sentence pursuant to which he is being held, or, more specifically, he is challenging the judgment pursuant to which he is incarcerated. The Court left open the question whether, after resentencing, a petitioner would be entitled to challenge "not only his resulting, *new* sentence, but also his original, *undisturbed* conviction." *Id.* at 342.

We answered the question left open in *Magwood* in *Wentzell v. Neven*, 674 F.3d 1124 (9th Cir. 2012). In *Wentzell*, we held that an amended judgment constitutes a new, intervening judgment that renders a subsequent habeas petition not second or successive *even if* the petition challenges only undisturbed portions of the original judgment. 674 F.3d at 1126–28. The petitioner in *Wentzell* pled guilty in Nevada state court to three crimes: "solicitation to commit murder (Count I), principal to the crime of attempted murder (Count II), and principal to the crime of theft (Count III)," with all of his sentences to run consecutively. *Id.* at 1125. Wentzell then filed an untimely federal petition for writ of habeas corpus. *Id.* The Nevada state court subsequently granted in part Wentzell's state habeas petition, which argued that under Nevada law, a

criminal defendant could not be convicted of both solicitation to commit murder and principal in the attempt to commit state murder. *Id.* The court therefore ordered an amended judgment of conviction dismissing Count I and its resulting sentence. *Id.* After an amended judgment containing only Counts II and III was filed, Wentzell filed a federal habeas petition. *Id.* at 1126.

We held that Wentzell's petition was not second or successive, even though the petition challenged his conviction and sentence on Counts II and III, which were not altered in any way by the amended judgment. *Id.* at 1127. We held that "the basic holding of *Magwood*" must extend to cases in which the numerically second petition challenged undisturbed parts of the judgment because *Magwood* requires courts to "interpret successive applications with respect to the *judgment* challenged and not with respect to *particular components* of that judgment." *Id.* (emphasis added) (quoting *Johnson v. United States*, 623 F.3d 41, 46 (2d Cir. 2010)). Although in some cases this would allow petitioners a number of opportunities to raise the same claims in various federal petitions, this court recognized that this result was consistent with *Magwood*, in which "[t]he Supreme Court rejected . . . a 'one opportunity rule.'" *Id.* Thus, as long as there has been a "new, intervening judgment," a prisoner's subsequent petition cannot be second or successive. *Id.* at 1128.

In short, under the law of this circuit and the Supreme Court, a petition is not second or successive when there is an amended judgment and the petition is the first one following that amended judgment. The case before us presents the question whether an amendment limited to correcting a defendant's presentence credit award constitutes a new, intervening judgment which renders a subsequent federal

habeas petition a first rather than second or successive petition under 28 U.S.C. § 2244(b)(1).

II.

Applying the reasoning of *Magwood* and *Wentzell*, we hold that in California, a court's recalculation and alteration of the number of time-served or other similar credits awarded to a petitioner constitutes a new judgment.  The Supreme Court has directed that "[t]he sentence *is* the judgment" in a criminal case.  *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (emphasis added) (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)).  As such, a change to a defendant's sentence is a change to his judgment.  Under California law, custody credits are part of that sentence and a court's alteration of the number of credits awarded to a defendant changes both the duration and legality of his sentence.  Because the relevant sentence under *Magwood* is the one "pursuant to" which an individual is held "in custody," such an alteration constitutes a new, intervening judgment.

A.

We look to state law to determine whether a state court action constitutes a new, intervening judgment.  *Clayton v. Biter*, 868 F.3d 840, 844 (9th Cir. 2017).  Under California law, it is clear that the number of presentence credits a prisoner earns is a part of that prisoner's sentence because it is a component of the number of days a convicted individual will spend in prison.  When sentencing a defendant, a state court must determine the number of days of custody to which the defendant is entitled to credit and then award credit according to an established formula.  Cal. Penal Code § 2900.5(d).  Prison officials must then subtract those days from the total number of days to which the defendant would

otherwise have been sentenced. *Id.* § 2900.5(a) ("In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, . . . all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . ."). The result is the total duration of time which a convicted person will have to spend in prison. Any erroneous assessment of credits therefore results in the defendant spending more or fewer days in prison than the sentence should have required.

Critically, under California law, only a sentence that awards a prisoner all credits to which he is entitled is a legally valid one. That is, a "sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered." *People v. Taylor*, 119 Cal. App. 4th 628, 647 (2004). Such an unauthorized sentence "is considered invalid or 'unlawful.'" *People v. Karaman*, 842 P.2d 100, 109 n.15 (Cal. 1992).

As a result, a state trial court's alteration of the number of presentence credits to which a prisoner is entitled is a legally significant act: it replaces an invalid sentence with a valid one. In determining whether, after amending the number of credits, there has been a new judgment "pursuant to" which a prisoner is "in custody" under *Magwood*, 561 U.S. at 332 (quoting 28 U.S.C. § 2254(b)(1)), the answer under California law is yes: before the amendment, the prisoner was *not* held in custody pursuant to a lawful judgment of the state courts and was being held for a greater number of days than was proper under California law. After the amendment, however, there is a valid judgment pursuant to which the prisoner is lawfully being held in custody and he is being held for a lesser (and the correct) number of

days.[1]   Thus, as in *Wentzell* and contrary to the state's argument that the amendment to Gonzalez's presentence credits "did not affect [his] conviction or sentence," the amendment removed an invalid basis for incarcerating Gonzalez, and provided a new and valid intervening judgment pursuant to which he was then being held in custody. *See Wentzell*, 674 F.3d at 1126–28.

That the Superior Court amended Gonzalez's presentence credits and then directed that an amended abstract of judgment be prepared further demonstrates that the court's order changed the sentence itself.   Under California law, the judgment of conviction is an "oral pronouncement" at sentencing.  *People v. Mesa*, 535 P.2d 337, 340 (Cal. 1975).   The "abstract of judgment" is the clerk's official recitation of the oral judgment of conviction, which must be provided to the state prison official charged with executing the judgment.   *See* Cal. Penal Code § 1213(a).  By statute, the abstract of judgment must reflect the sentence, including the "[t]otal number of days to be credited" against the term of imprisonment imposed by the sentencing court.   Cal. Penal Code § 2900.5(d); *People v. Cardenas*, 239 Cal. App. 4th 220, 236 (2015).

Because the "abstract of judgment is not the judgment of conviction" and "does not control if different from the court's oral judgment," a court must amend the abstract of judgment any time there is a discrepancy between the two. *People v. Mitchell*, 26 P.3d 1040, 1042 (Cal. 2001).   The

---

[1] For example, in *People v. Garner*, 244 Cal. App. 4th 1113 (2016), because the "judgment must include a custody credit award" to which the defendant is legally entitled and the defendant's original sentence did not reflect those credits, the Court of Appeal "modif[ied] the judgment" to include the correct presentence credits. *Id.* at 1118–19.

California Supreme Court has emphasized that it is especially "important," and indeed necessary, to "correct errors and omissions in abstracts of judgment" because those written documents provide the "authority for carrying the judgment and sentence into effect." *Id.* at 1042–43. Here, a minute order reflects that the Superior Court first found that the credits initially awarded to Gonzalez were calculated incorrectly and so "order[ed] the defendant credits amended." Then, because the abstract of judgment is used to effectuate the judgment and so must accurately reflect the sentence, the Superior Court instructed that an "amended abstract of judgment [] be prepared" as well. This was a necessary action following the correction of an award of presentence credits. Because the recalculation of presentence credits necessarily led to a change in the sentence and judgment, the abstract of judgment had to be amended as well so as to reflect that change. In short, because the addition of time served credits to his sentence constituted an amended judgment, Gonzalez's first habeas petition filed after that intervening judgment was a first, not a second or successive, petition, regardless of how many habeas petitions he had filed prior to that new judgment.

## B.

The state's entire argument is founded on a procedural statutory provision allowing a superior court to amend certain types of errors rather than having those errors amended by order of a court of appeal. For the sake of convenience and judicial economy, California has established a procedure for correcting "minor sentencing errors" that do not require a formal appellate process. *People v. Delgado*, 210 Cal. App. 4th 761, 765–66 (2012) (analyzing the legislative history of California Penal Code § 1237.1, adopted in 1995 by the state legislature). Section

1237.1 sets forth the procedure for a whole range of minor sentencing errors, which include "an error in 'doing the math,'" "an apparent oversight in an award of credits," and more traditional clerical or scrivener's errors. *Id.* at 765. To correct such errors, a defendant must present those claims to the superior court rather to the appellate court. Cal. Penal Code § 1237.1.

The magistrate judge's report and recommendation (which was adopted by the district court), as well as the state on appeal, mistakenly relies on the *Delgado* court's use of the phrase "mathematical or clerical error" in describing the kind of error that may be corrected by the superior court as its basis for erroneously concluding that a correction of presentence credits does not result in a new judgment.[2] However, *Delgado* considers solely the process by which a defendant seeks to correct minor sentencing errors. The fact that an error in the calculation of presentence credits can be corrected by the superior court rather than on appeal has no bearing on the legal effect of that correction. Regardless of how *Delgado* denominated the errors and the manner by which they are corrected, there is no dispute that here, Gonzalez's sentence had to be amended to reflect the credits to which he was legally entitled. Under California law, a "sentence that fails to award legally mandated custody credit is unauthorized." *Taylor*, 119 Cal. App. 4th at 647. Moreover, it is not even a legal sentence. *See Karaman*,

---

[2] The magistrate judge also relies on *People v. Jack*, 213 Cal. App. 3d 913 (1989), which distinguishes between types of errors and the procedures by which California courts correct those errors, although *Jack* precedes the adoption of the process set forth in section 1237.1 and described in *Delgado*. Since the issuance of *Delgado*, California's appellate courts have followed that decision.

842 P.2d at 109 n.15. Whatever the technical name for the error, until the miscalculation is corrected there is no valid sentence pursuant to which the defendant may be held in custody; but once the proper credits are added to the sentence, the entire judgment is amended and the amended judgment becomes the judgment pursuant to which the defendant is held in custody.[3]

A miscalculation of the credits to be included in the sentence, or in other words, this type of mathematical error in the judgment, is not to be confused with another type of minor sentencing error—a scrivener's error—which is also within that category of errors not ordinarily requiring action by an appellate court. A scrivener's error occurs when there

---

[3] This common-sense approach to determining whether a new sentence exists for purposes of AEDPA is similar to the approach used in what appears to be the most analogous case decided by a federal court of appeals. In *In re Stansell*, 828 F.3d 412 (6th Cir. 2016), the Sixth Circuit considered whether a state trial court's subsequent imposition of a period of supervised release that did not alter the period of incarceration to which the defendant was sentenced constituted a new, intervening judgment. The court concluded that it did. Although the change might be described as a "technical amendment" or "ministerial change," the Sixth Circuit looked to that change's effect instead: "[b]efore his resentencing, the judgment that kept Stansell 'in custody' was a term of imprisonment ranging from twenty years to life. After his resentencing, the judgment that kept Stansell 'in custody' was a term of imprisonment ranging from twenty years to life *plus* five years of post-release control." *Id.* at 416–17. Here, too, we look to the *effect* of a change under state law on a petitioner's sentence. Before the Superior Court amended Gonzalez's presentence credits, "the judgment that kept [Gonzalez] 'in custody' was a term of imprisonment ranging from [65 years] to life [minus 533 days]. After [the amendment], the judgment that kept [Gonzalez] 'in custody' was a term of imprisonment ranging from [65 years] to life [minus 533 days]," *and* minus an additional twenty-one days. *Id.* at 416.

is a discrepancy between the court's oral pronouncement of the judgment and the written record of that judgment in the minute order or in the abstract of judgment. For example, a scrivener's error occurs if the oral pronouncement of judgment is "5 years" but the clerk writes "50 years" in the written document reflecting that judgment. Under California law, when there is a difference between the trial court's oral judgment and the written abstract of judgment, the oral pronouncement controls as it constitutes the actual judgment. *Mitchell*, 26 P.3d at 1043. Correcting a scrivener's error in the abstract of judgment does not lead to a new judgment because the judgment itself does not change, only the written record that erroneously reflects that judgment.[4] In the above example, the judgment pronounced orally would remain at 5 years and the abstract of judgment would be amended to correctly reflect that 5-year judgment. Unlike an error in the calculation of credits when the oral judgment itself is in error such that both the judgment and abstract of judgment must be amended, a scrivener's error carries no legal consequences as it is only the record that must be corrected and that record does not contain the actual judgment or the actual sentence to be served.

---

[4] This interpretation is consistent with other federal courts of appeals that have similarly concluded that corrections to scrivener's errors do not give rise to a new, intervening judgment. *See In re Stansell*, 828 F.3d at 420 (stating that corrections of any "discrepancy between the court's oral pronouncement and its paper records" are not "new judgments for purposes of the second or successive requirements"); *Marmolejos v. United States*, 789 F.3d 66, 71 (2d Cir. 2015) (holding that "an amended judgment merely correcting errors that were clerical"—correcting a misspelling of the defendant's name from "Marmolejas" to the correct "Marmolejos"—"does not constitute a 'new judgment' within the meaning of *Magwood*").

## C.

The magistrate judge concluded, and the state argues on appeal, that the amendment to Gonzalez's presentence credits operated as a nunc pro tunc order—even if not so labeled by the Superior Court—because the court directed the award of custody credits amended "as of the original sentencing date." The magistrate judge reasoned that nunc pro tunc "literally means 'now for then,' and is 'used in reference to an act to show that it has retroactive legal effect. . . . as if done at [the] time when it ought to have been done.'" *Gonzalez v. Diaz*, NO. CV 13-5248-PA (PLA), 2014 WL 5493874, at \*6 (C.D. Cal. June 11, 2014) (quoting *United States v. Yepez*, 704 F.3d 1087, 1092 n.1 (9th Cir. 2012) (en banc) (Wardlaw, J., dissenting)). Thus, the magistrate judge concluded that the minute order did not affect the finality of the initial judgment. This erroneous conclusion represents a misunderstanding of when nunc pro tunc orders are appropriate under California law and what it means for an order to be retroactive.

The Superior Court did not label its minute order amending the presentence credits as a nunc pro tunc order because it could not. In California, "the function of a nunc pro tunc order is merely to correct the record of the judgment and not to alter the judgment actually *rendered*." *In re Eckstrom's Estate*, 54 Cal. 2d 540, 544 (1960) (citation omitted) (emphasis added); *see also People v. Borja*, 95 Cal. App. 4th 481, 485 (2002) (holding that trial court erred in issuing nunc pro tunc order where defendant "sought a retroactive change in his sentence" to reduce the number of days sentenced). Thus, nunc pro tunc orders can be used only to correct errors of the scrivener's sort—"recording errors." They may not be used to correct errors of the mathematical sort which lead to a substantive change in the

judgment—"rendering errors."     The magistrate judge's
conclusion that the minute order was akin to a nunc pro tunc
order reflects his failure to understand the different types of
errors covered by the procedural statute that requires the
sentencing court to correct "minor sentencing errors"
directly.   *See Delgado*, 210 Cal. App. 4th at 765–66.
Specifically, a mathematical error contained in the oral
judgment is a "rendering error" that must be corrected in
order for the defendant to be held pursuant to a valid
judgment and thus cannot be ordered nunc pro tunc.   In
contrast, a scrivener's error in a minute order or an abstract
of judgment is a "recording error" that must be corrected to
make    those    documents    consistent    with    the    oral
pronouncement (the judgment) and may be ordered nunc pro
tunc.[5]

Further, contrary to the magistrate judge's view, it is of
no moment that the Superior Court ordered the presentence
credits amended "as of the original sentencing date."   Every
order correcting a sentencing error is "retroactive" in this
sense: the defendant's sentence still starts from the time of
the original sentence's imposition, but for more or less time
depending on the amendment.   It would make no sense to
restart the defendant's sentence as of the date of the
amendment when he has already served part or all of the
sentence.   The state gives no explanation as to why an
alteration of a prisoner's presentence credits based on a
calculation error is any more retroactive or "nunc pro tunc"

---

[5] For AEDPA purposes, it does not matter whether the error in the
judgment was minor or major.   What matters is whether there is an
amended judgment.   Even if the judgment is not substantively changed,
it constitutes a new, intervening judgment if the earlier judgment is
amended or even if it is reissued as an amended judgment as in
*Magwood*.   Here, the judgment, because it contains the new, correct
provision of presentence credits, is an amended judgment.

than any other order correcting an unlawful or invalid sentence. In *Wentzell*, for example, the state court amended the judgment of conviction to dismiss Count 1 and the sentence under Count 1. 674 F.3d at 1125. The amended judgment reflected convictions and sentences for Counts 2 and 3, which remained the same as in the original judgment: 20 years and 10 years. *Id.* This order was retroactive in the sense that the duration of time served was to be calculated from the date of the original judgment, rather than from the date of the amendment. Nevertheless, the amendment to the judgment was clearly a new judgment under *Magwood*. So, too, with the amendment to Gonzalez's presentence credits, and thus to his sentence.

III.

In recognition of the fact that our holding will likely have the effect of allowing more prisoners to file timely federal habeas petitions, we conclude by reiterating what the Supreme Court said in *Magwood* about the limited effect of broadening the rule that a petition is not second or successive while recognizing that an intervening amended sentence starts an entirely new petition cycle for purposes of second or successive petitions. First, the Court said, the procedural default rule will continue to limit what claims may be brought in a federal petition: "A petitioner may not raise in federal court an error that he failed to raise properly in state court in a challenge to the judgment reflecting the error." *Magwood*, 561 U.S. at 340. Thus, the petitioner will be limited to claims he has already made before the state court. As a result, even after an amendment to a prisoner's presentence credits, federal courts will not be forced to waste time considering new "abusive claims." *See id.* Second, even if after such a resentencing, a petitioner files a new petition reraising all of the arguments previously rejected by

a federal court, "[i]t will not take a court long to dispose of such claims where the court has already analyzed the legal issues." *Id.* at 340 n.15. Accordingly, in line with the Court's explanation, our holding places little burden on our system by following the now well-established rule endorsed by *Magwood* and *Wentzell*.

## CONCLUSION

For the forgoing reasons, the district court's dismissal of Gonzalez's petition for writ of habeas corpus is reversed and the case is remanded for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**