Filed 8/23/22; order modifying opinion
and denying rehearing (unmodified opinion attached)

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re JASON V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JASON V.,<br><br>        Defendant and Appellant. | A163366<br><br>(Contra Costa County<br>Super. Ct. No. J17-00992)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING NO CHANGE IN JUDGMENT** |

**BY THE COURT:**

It is ordered that the opinion filed herein on July 28, 2022, be modified as follows:

1. On page 12, delete last sentence of first full paragraph, beginning with "It is Jason who is attempting to use . . . ," and replace it with the following sentence:

> Failing to give effect to the nunc pro tunc order would result in a fortuitously timed, inadvertent error on a non-discretionary point requiring the court to order a disposition it specifically chose *not* to order when it exercised its discretion to commit Jason to DJJ.

> Footnote 12 at the end of the sentence remains the same.

2. On page 14, delete the following portion of the last two sentences of the first full paragraph:

1

—which Jason calls a "dispositional hearing" because he views the nunc pro tunc order as invalid, but the juvenile court and Attorney General view as a section 737 review hearing. Jason further contends he is entitled

Replace the deleted portion with the word "and." The sentence should read:

He contends he is entitled to these additional credits for days in custody prior to the July 12 hearing and to credit for the time he spent in juvenile hall following July 12 until he was transferred to DJJ on November 23, 2021.

This modification does not effect a change in the judgment.

Appellant's petition for rehearing is denied.

Dated: _____                     _____
                                            Stewart, Acting P.J.

Trial Court:                      Contra Costa County Superior Court

Trial Judge:                      Hon. John W. Kennedy


Attorney for Appellant:           By Appointment of the Court of Appeal
                                  First District Appellate Project
                                  Amanda K. Roze

Attorneys for Respondent:         Rob Bonta
                                  Attorney General of California

                                  Lance E. Winters
                                  Chief Assistant Attorney General

                                  Jeffrey M. Laurence
                                  Senior Assistant Attorney General

                                  René A. Chacón
                                  Supervising Deputy Attorney General

                                  Viktoriya Chebotarev
                                  Deputy Attorney General

                                  Nanette Winaker
                                  Deputy Attorney General

Filed 7/28/22 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JASON V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JASON V.,<br><br>    Defendant and Appellant. | A163366<br><br>(Contra Costa County<br>Super. Ct. No. J17-00992) |

After June 30, 2021, juvenile courts are no longer able to commit juveniles to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ). Jason V. was committed to DJJ prior to June 30, 2021, but the trial court erroneously ordered an impermissible maximum term of confinement. In July 2021, the court entered a nunc pro tunc order stating the correct maximum period. Jason contends the commitment order must be vacated because judicial error cannot be corrected by a nunc pro tunc order and, on the date the order was entered, he could not be committed to DJJ. He also contends he is entitled to additional days of credit for time spent in local confinement that the juvenile court failed to award. We will remand the case for recalculation of the credits Jason is entitled to and otherwise affirm the dispositional order.

1

# BACKGROUND

On March 25, 2021, a second amended juvenile wardship petition (Welf. & Inst. Code,[1] § 602, subd. (a)) was filed in Santa Clara County alleging that 18-year-old Jason committed eight counts of second degree robbery (Pen. Code, § 212.5, subd. (c)), two on November 18, 2020 (counts 1 & 2), three on December 8, 2020 (counts 3–5), three on December 9, 2020 (counts 6–8), and one count of conspiracy to commit second degree robbery (Pen. Code, § 182, subd. (a)(1), 212.5, subd. (c)). It was alleged that Jason was armed with a firearm during commission of the robberies in counts 1 through 7 (Pen. Code, § 12022, subd. (a)(1)).

The underlying facts are not directly relevant to the issues on appeal and need only be described briefly. As related in probation reports, the robberies were of 7 Eleven stores; during one, on December 9, 2020, one of the three suspects inside the store shot and killed the cashier (count 6). Jason was identified as the driver in that robbery, and as one of the suspects inside the stores in others. A co-responsible reported that Jason planned the robberies and gave the co-responsible his gun, gloves, and a mask.

Jason admitted two counts of robbery (counts 3 & 6), the count of conspiracy (count 9), and eight of the 26 alleged overt acts; the remaining counts and all the enhancement allegations were dismissed; and the case was transferred to Contra Costa County for disposition.

On June 28, 2021, following a contested dispositional hearing, the Contra Costa County Juvenile Court committed Jason to DJJ for a maximum term of confinement of nine years two months for the Santa Clara offenses, as well as offenses Jason had admitted in connection with two previous petitions

---

[1] Subsequent statutory references will be to the Welfare and Institutions Code except as otherwise specified.

that had been sustained in Contra Costa County.[2]  This order was consistent with the probation department's recommendation.  Jason was to be detained at juvenile hall pending delivery to DJJ.

In its report for a scheduled section 737[3] hearing on July 12, 2021, the probation department stated that a "new maximum custodial time pursuant to [Senate Bill No.] 823"[4] had been calculated and recommended the court order "6 years and 8 months nun[c] pro tunc."  After the hearing, the juvenile court filed an amended commitment order stating a maximum period of confinement of six years four months.[5]  The court's minute order for July 12, 2021, stated:  "Due to legal error, the minor's maximum commitment term corrected to 6 yrs, 4 mos, nunc pro tunc to 6-28-21."

Jason filed a notice of appeal from the orders of June 28 and July 12, 2021, on July 30, 2021.[6]

---

[2] In the Contra Costa County cases, Jason V. pleaded no contest to one count of felony second degree burglary and one count of misdemeanor burglary (Pen. Code, §§ 459/460) in 2017, and to one count of misdemeanor battery causing serious bodily injury (Pen. Code, §§ 242/243, subd. (d)) in 2019.

[3] Section 737 requires periodic review where a minor continues to be detained for more than 15 days pending execution of an order of commitment.

[4] (See Stats. 2020, ch. 337, § 28; Sen. Bill No. 823 (2019–2020 Reg. Sess.) § 38.).)

[5] The record does not explain the discrepancy between the six-year, eight-month maximum stated in the probation report and the six-year, four-month maximum ordered by the court, and the parties do not mention it. The six-year, four-month calculation appears to be correct.

[6] Jason filed a petition for writ of mandate in this court on September 24, 2021, which was summarily denied on February 10, 2022 (A163537).  He filed a petition for review in the California Supreme Court, which was denied on March 23, 2022 (S273244).

3

## DISCUSSION

## I.

### *The Trial Court's Correction of the Disposition Order Was Permissible*

In section 736.5, which became effective on May 14, 2021, the Legislature stated its intention to close the DJJ and shift responsibility for youths adjudged wards of the court to county governments, with annual funding for county governments to fulfill this responsibility.  (§ 736.5, subd. (a).)  The final closure date for DJJ is June 30, 2023.  (§ 736.5, subd. (e).)  Pursuant to subdivision (b) of section 736.5, beginning on July 1, 2021, courts could no longer commit wards to DJJ except in circumstances not relevant here.[7]  Jason was committed to DJJ on June 28, 2021, the third-to-last day such an order could be imposed.

When a ward is committed to DJJ, the juvenile court is required to set a maximum period of confinement.  (§ 731, subd. (c).)  Since September 30, 2020, the maximum period of confinement has been limited to the middle term of imprisonment that could be imposed upon an adult convicted of the same offense.  (§ 731, subd. (c), as amended by Stats. 2020, ch. 337, § 28 [operative Sept. 30, 2020, to June 30, 2021]; Stats. 2021, ch. 18, § 8 [operative

---

[7] Subdivision (c) of section 736.5 provides:  "Pending the final closure of the Department of Corrections and Rehabilitation, Division of Juvenile Justice, a court may commit a ward who is otherwise eligible to be committed under existing law and in whose case a motion to transfer the minor from juvenile court to a court of criminal jurisdiction was filed.  The court shall consider, as an alternative to commitment to the Division of Juvenile Justice, placement in local programs, including those established as a result of the implementation of Chapter 337 of the Statutes of 2020."  No motion to transfer was filed in the present case.

July 1, 2021].)[8]  Previously, the maximum period of confinement was the *maximum* term of imprisonment that could be imposed upon an adult convicted of the same offense.  (Former § 731, subd. (c).)

Accordingly, and as the juvenile court here belatedly recognized, when Jason was committed to DJJ on June 28, 2021, the court erred in setting his maximum term of confinement at the *maximum* term for an adult convicted of the same offenses rather than the *middle* term.  Hence the court's order correcting the maximum period of confinement nunc pro tunc.

Jason argues the corrected order is invalid because the court could not correct *judicial* error with a nunc pro tunc order.  " ' "A nunc pro tunc order or judgment is one entered as of a time prior to the actual entry, so that it is treated as effective at the earlier date." ' (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 851.)  Trial courts have the authority to enter nunc pro tunc orders to address *clerical* errors, but not *judicial* errors.  (*People v. Kim* (2012) 212 Cal.App.4th 117, 124.)" (*Sannmann v. Department of Justice* (2020) 47 Cal.App.5th 676, 683 (*Sannmann*).)

"An order made nunc pro tunc should correct clerical error by placing on the record what was actually decided by the court but was incorrectly recorded.  It may not be used as a vehicle to review an order for legal or judicial error by 'correcting' the order in order to enter a new one." (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 891 (*Hamilton*).)  " 'A court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a nunc pro tunc order. [Citations.]  It cannot, however, change an order which has become final even though made in error, if in fact

---

[8] The current version of section 731, which applies only to wards subject to motions to transfer as provided in section 736.5, subdivision (c), is to remain in effect until the final closure of DJJ.  (§ 731, subd. (c), as amended by Stats. 2021, ch. 18, § 8.)

the order made was that intended to be made. . . .  "The function of a nunc pro tunc order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made. . . ." ' "  (*Hamilton*, at p. 890, quoting *Estate of Eckstrom* (1960) 54 Cal.2d 540, 544–545.)  " '[N]unc pro tunc orders may not be made to 'make the judgment express anything not embraced in the court's decision, even though the proposed amendment contains matters which ought to have been so pronounced.  [Citations.]' "  (*Ibid.*)  " 'It is only when the form of the judgment fails to coincide with the substance thereof, as intended at the time of the rendition of the judgment, that it can be reached by a corrective nunc pro tunc order.' "  (*Ibid.*)

In Jason's view, the June 28 order was void, as it imposed an unauthorized sentence (*People v. Scott* (1994) 9 Cal.4th 331, 354); the juvenile court acknowledged it made a legal error; and the nunc pro tunc order was improperly used to correct that error in violation of the principles above.  In the unique circumstances presented here, we do not find the situation so clear.

We agree that the error here cannot be seen as a "recording" error in the sense of a clerk or judge incorrectly writing down something other than what the judge in fact ordered—in essence, a scrivener's error.  But the category of error that may be viewed as "clerical" for purposes of determining the validity of a nunc pro tunc order, is not limited to scrivener-type errors.  " ' "Generally, a clerical error is one inadvertently made, while a judicial error is one made advertently in the exercise of judgment or discretion.  [Citations.]" ' "  (*People v. Davidson* (2008) 159 Cal.App.4th 205, 210, quoting *People v. McGee* (1991) 232 Cal.App.3d 620, 624.)

As our Supreme Court has explained, "a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts." (*In re Candelario* (1970) 3 Cal.3d 702, 705 (*Candelario*).) "Clerical error, however, is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' (46 Am.Jur.2d, Judgments, § 202.) Any attempt by a court, under the guise of correcting clerical error, to 'revise its deliberately exercised judicial discretion' is not permitted. (*In re Wimbs* (1966) 65 Cal.2d 490, 498.) [¶] An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, therefore, unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion. (*Morgan v. State Bd. of Equalization* (1949) 89 Cal.App.2d 674, 682; *Waters v. Spratt* (1958) 166 Cal.App.2d 80, 86, disapproved on another ground in *Kusior v. Silver* (1960) 54 Cal.2d 603, 616; see *Bastajian v. Brown* (1941) 19 Cal.2d 209, 214–215.)" (*Candelario*, at p. 705.)

Accordingly, cases have invalidated nunc pro tunc orders that served to change a result that was intended by the court at the time it exercised its discretion. For example, in *Hamilton*, *supra*, 57 Cal.App.4th at pages 887–889, 10 years after entry of a judgment establishing a medical trust for a minor, the trial court entered an order establishing a special needs trust; by doing so nunc pro tunc, the order avoided a statutory lien for payments made by a governmental agency as a result of the structure of the trust originally established. The nunc pro tunc order thus improperly changed the substance

of the original order, "materially alter[ing] the relative rights of the parties affected by the original order in a manner not contemplated." (*Id.* at p. 892.)

In *Sannmann*, after pleading guilty to robbery and completing probation, the defendant was granted relief under Penal Code section 1203.4: The court set aside the prior plea, entered a plea of not guilty and dismissed the accusatory pleading. (*Sannmann*, *supra*, 47 Cal.App.5th at p. 679.) Upon learning this relief did not permit him to own or possess a firearm, the defendant moved to set aside the previous order, withdraw his plea to the robbery charge and enter a plea of guilty to misdemeanor grand theft, nunc pro tunc to the date of the original plea. (*Id.* at p. 680.) The court's order granting this relief did not correct an error in recording the original plea; it improperly changed the record to reflect a different plea than the one actually entered. (*Id.* at pp. 683–684.)

In *People v. Borja* (2002) 95 Cal.App.4th 481, a condition of the defendant's probation required him to serve 365 days in local custody. After he had completed probation, the trial court modified his sentence to 364 days, nunc pro tunc to the date of the original sentencing—relief the defendant sought because changes in federal law since the original sentencing made a sentence of less than one year critical to whether he could be deported. (*Id.* at pp. 483–484.) The order was invalid because it imposed a sentence different from the one "intended, imposed and served" and " ' "a nunc pro tunc order cannot declare that something was done which was not done." ' " (*Id.* at p. 485, quoting *Johnson & Johnson v. Superior Court* (1985) 38 Cal.3d 243, 256.)

The present case is different. The trial court made two discretionary decisions in committing Jason to DJJ. First, it decided DJJ was the appropriate disposition notwithstanding the fact that DJJ would be closing

by June 2023.  After receiving evidence regarding programs available at DJJ and at the new county program that on July 1, 2021, would begin to receive minors who would otherwise have been committed to DJJ, the court concluded DJJ was the appropriate disposition in light of the seriousness of Jason's offenses, the fact that he had re-offended despite several prior placements in county programs,[9] and the availability of treatment, educational and vocational programs at DJJ that the county program would not be equipped to provide.[10]  Second, the court decided to impose the maximum period of confinement allowed by law, expressly stating it was aware of its discretion to impose a period of confinement less than the maximum allowed, but declined to do so.  Neither of these discretionary decisions have been challenged.

In setting the actual length of the period of confinement, by contrast, the court exercised no discretion:  Having decided to impose the maximum

---

[9] Jason had previously completed two nine-month ranch programs and failed to complete a third 12-month ranch program.

[10] Testimony at the disposition hearing established that plans for closure of DJJ had not yet been developed, but were required to be made by January 2022.  Testimony also established that the county program which would begin on July 1, 2021, to receive juveniles who otherwise would have been sent to DJJ was still being researched and developed, and would not have in place programs comparable to those available at DJJ.  The new program would be located at juvenile hall and initially would be the same as the current one-year Youth Offender Treatment Program (YOTP) offered at juvenile hall.  Jason had been screened for the YOTP and found unacceptable due to the severity of his offenses and the fact that he had previously completed county institution treatment programs.  YOTP differed from the ranch placements in that it is a locked facility, but the treatment classes are the same or similar at both.  At the disposition hearing, the prosecutor and probation officer urged the court that that commitment to DJJ was necessary because county programming had been unsuccessful and what Jason needed was beyond the scope of what juvenile hall could provide.

period allowed, the court imposed the maximum it believed to be dictated by section 731—the nine-year, two-month maximum sentence an adult convicted of the same offenses could receive. The court was unaware that Senate Bill No. 823 had changed the law to limit the maximum period of confinement to the *middle* term an adult could receive for the same offense, and apparently the probation officer, the prosecutor, and defense counsel were similarly unaware. When the issue was brought to the court's attention, the court modified the period of confinement to conform to the maximum allowed under the amended statutes, correcting the error within two weeks and before Jason was transferred to DJJ.

Had it not been for the singular circumstance of the June 30, 2021 final date for DJJ commitments, the disposition order would have been amended at some point to correct the erroneously stated length of the period of confinement. An unauthorized sentence may be corrected at any time. (*In re G.C.* (2020) 8 Cal.5th 1119, 1132; *People v. Scott, supra,* 9 Cal.4th at pp. 354–355; *People v. Turrin* (2009) 176 Cal.App.4th 1200, 1205.) Making this correction by nunc pro tunc order would not normally present much of an issue. Although no case addressing the question has been called to our attention, and we are not aware of any, it is apparent from factual descriptions in appellate cases that it is not unusual for courts to correct errors in specifying the length of the period of confinement by nunc pro tunc order. (E.g., *In re Eduardo M.* (2006) 140 Cal.App.4th 1351, 1354, fn. 2; *In re Devin J.* (1984) 155 Cal.App.3d 1096, 1098.)

Here, of course, the point is critical—but not because of the change in length of the period of confinement. If the correction could not be made nunc pro tunc, as Jason contends, the court could not have committed Jason to DJJ because a commitment to DJJ was prohibited after June 30. The court was

10

well aware of this deadline:  It denied Jason's request for a brief continuance until after June 30, which Jason sought to enable the court to commit him to the new program being developed by the county, and chose to send Jason to DJJ before DJJ stopped accepting commitments.  Thus, if the nunc pro tunc order was impermissible, the court's inadvertent failure to recognize the change of law regarding the maximum period of confinement would require nullification of the considered discretionary decisions the court made in determining Jason would be best served by commitment to DJJ for the maximum period allowed.

" '[A]mendments to judgments can only be made for the purpose of making the record conform to the truth, and not for the purpose of revising and changing the judgment.' " (*Estate of Eckstrom*, *supra*, 54 Cal.2d 540, 544, quoting *Felton Chemical Co v. Superior Court* (1939) 33 Cal.App.2d 622, 627.) As we have said, " '[a]n amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error . . . *unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion.*' " (*People v. Kim*, *supra*, 212 Cal.App.4th at p. 124, quoting *Candelario*, *supra*, 3 Cal.3d at p. 705, italics added.)

In the circumstances here, a conclusion that inadvertent legal error requires a new disposition hearing and commitment to a program other than the one the juvenile court found appropriate would result in the opposite of what the limitations on nunc pro tunc orders is intended to achieve:  The court would be prevented from implementing its discretionary decisions and,

by virtue of the inadvertent error, Jason would obtain a disposition *different* from the one the court intended and ordered.[11]

This is not a case in which the court employed a nunc pro tunc order " '*to rescue subjective judicial intentions when a judge failed in any way to act on those intentions in entering judgment.*' " (*Hamilton*, *supra*, 57 Cal.App.4th at pp. 890–891, quoting 46 Am.Jur.2d (1994) Judgments, § 166, pp. 494–495.) Nunc pro tunc correction of the maximum period of confinement did not retroactively alter an order to achieve a result different from what the court intended in its original exercise of discretion, as in cases like *Sannmann*, *supra*, 47 Cal.App.5th 676, and *People v. Borja*, *supra*, 95 Cal.App.4th 481. To the contrary, nunc pro tunc correction allowed the court to effectuate its discretionary decision. It is Jason who is attempting to use a fortuitously timed, inadvertent error on a non-discretionary point to change the court's order and obtain the result the court chose *not* to order when asked to exercise its discretion to order a disposition other than commitment to DJJ.[12]

---

[11] Jason argues that " '[s]entencing . . . is not a ministerial duty.' " (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1260.) Putting aside the fact that this particular quote is the court's description of an observation by the petitioner in that case, the point is incontestable, but not particularly relevant. The issue in *Peracchi* has no direct relevance to our case: The Supreme Court rejected the petitioner's argument that because his resentencing hearing called for the trial court to exercise discretion and determine factual issues, it was a "new trial" for purposes of a Penal Code section 170.6 challenge. Undoubtedly, sentencing as a whole is a judicial function. But that does not necessarily mean an error made by the judge in the course of sentencing, but on a *nondiscretionary* point, necessarily constitutes judicial error not subject to nunc pro tunc correction.

[12] The Attorney General relies on *People v. Jack* (1989) 213 Cal.App.3d 913 (*Jack*), which rejected a defendant's argument that the trial court had no jurisdiction to correct an error in calculating presentence credit that had been made at his sentencing hearing over a year before. Applying the principle

## II.

### *Jason is Entitled to Additional Custody Credits*

" '[A] minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing.

---

that "[t]he distinction between judicial errors which may not be corrected and clerical errors which may be remedied has been made to prevent a trial court from attempting to revise ' "its deliberately exercised judicial *discretion*[,]" ' (*Candelario, supra,* 3 Cal.3d at p. 705[]]," *Jack* held the trial court "had no discretion to exercise" because calculating the number of days of custody and applying the "established formula" to determine credits is a "ministerial duty." (*Id.* at p. 917.)

Jason argues at length that we should not follow *Jack* because it was incorrectly decided and has been superseded by Penal Code section 1237.1, which requires "minor sentencing error" such as "mathematical or clerical error" "in the amount of presentence custody credits awarded," to be presented to the superior court before they can be challenged on appeal (*People v. Delgado* (2012) 210 Cal.App.4th 761, 765.) Instead, he maintains the Ninth Circuit Court of Appeals correctly summarized California law in *Gonzalez v. Sherman* (9th Cir. 2017) 873 F.3d 763 (*Gonzalez*), and concluded error in calculating presentence credits cannot be corrected by nunc pro tunc order.

We need not delve into Jason's criticisms of *Jack* and reliance on *Gonzalez,* as neither bear directly on the issues we must resolve. Both cases involved presentence custody credits, not length of a juvenile period of confinement. *Jack* did not involve a nunc pro tunc order. *Gonzalez,* in which the question was whether a judgment amended to correct the number of presentence credits constituted a new, intervening judgment for purposes of federal law precluding successive habeas corpus petitions, addressed nunc pro tunc orders in dismissing an argument that correction of credits pursuant to Penal Code section 1237.1 does not result in a new judgment. (*Gonzalez, supra*, 873 F.3d at pp. 772–773.) The court noted that for purposes of the successive petition rule, it matters only that a judgment is amended, regardless whether the amendment makes a substantive change in the judgment. (*Id.* at p. 773, fn. 5.) In our view, whether a nunc pro tunc order makes a substantive change in the judgment is highly relevant in determining the propriety of the order.

13

(Pen. Code, § 2900.5, subd. (a); *In re Eric J.* (1979) 25 Cal.3d 522, 533–536.) It is the juvenile court's duty to calculate the number of days earned, and the court may not delegate that duty. (Pen. Code, § 2900.5, subd. (d); *People v. Vargas* (1988) 204 Cal.App.3d 1455, 1469, fn. 9.)' (*In re Emilio C.* (2004) 116 Cal.App.4th 1058, 1067.)" (*In re Edward B.* (2017) 10 Cal.App.5th 1228, 1238.)

Jason contends he is entitled to more credits than the juvenile court awarded. At the disposition hearing on June 28, 2021, the juvenile court awarded 1,027 days of custody credits and ordered Jason detained in juvenile hall pending delivery to DJJ. As of the July 12, 2021 hearing, the probation officer calculated 1,041 days of credit, but the amended commitment order lists 1,027 days. Jason maintains the correct number at this point was 1,048, due to omission of credit for a detention from December 5 to 7, 2018, and an arithmetic miscalculation of the total.[13] He contends he is entitled to these additional credits for days in custody prior to the July 12 hearing—which Jason calls a "dispositional hearing" because he views the nunc pro tunc order as invalid, but the juvenile court and Attorney General view as a section 737 review hearing. Jason further contends he is entitled to credit for the time he spent in juvenile hall following July 12 until he was transferred to DJJ on November 23, 2021.

The Attorney General agrees that Jason is entitled to have the June 28, 2021, disposition order amended to reflect any additional credits due for the period up to and including June 28, 2021. The Attorney General maintains

---

[13] We observe a discrepancy between the probation officer's calculation, which includes custody dates December 7 to 11, 2018, and probation reports indicating Jason was detained on December 5, 2018, and released to home supervision on December 7, 2018. Deduction of credit for December 8 to 11 would result in a total of 1,044 as of July 12, 2021.

Jason is not entitled to further amendment of the disposition order to include credit for days subsequent to the June 28 disposition hearing. (*In re Edward B.* (2017) 10 Cal.App.5th 1228, 1239 [declining to order juvenile court to amend disposition order to include credits not yet accrued when order issued].)

Jason is entitled to credit for all time in custody prior to his transfer to DJJ on November 23, 2021. (*In re J.M.* (2009) 170 Cal.App.4th 1253, 1256.) *In re Edward B.* is not to the contrary. In declining to order amendment of the dispositional order, we explained: "Undoubtedly, Edward is entitled to credit against his maximum term of confinement for any time he spent in custody between the dispositional hearing and his placement at the ranch ([*In re J.M.*, *supra*, 170 Cal.App.4th at p. 1256]), but there was no error on the part of the juvenile court in failing to calculate those credits, because any such period in custody had not yet occurred." (*In re Edward B.*, *supra*, 10 Cal.App.5th at p. 1239.) *In re J.M.* ordered amendment of the minute order from the postdisposition review hearing to reflect credit for the minor's days of custody between disposition and transfer to his placement. (*In re J.M.*, at pp. 1256–1257.)

Here, Jason had multiple review hearings after the June 28, 2021 disposition hearing; the minute order for a hearing on December 1, 2021, indicates he was delivered to DJJ on November 23, 2021. None of the orders refer to credits. Jason submits that his "post-disposition" local custody time was 134 days, from July 12, 2021, to November 23, 2021. As we have concluded the juvenile court did not err in correcting the June 28 disposition order nunc pro tunc, Jason's postdisposition time must be calculated from June 28, 2021. As a practical matter, however, this is immaterial: The

15

number of days Jason spent in juvenile hall will be the same whether denominated pre- or postdisposition.

Given the apparent miscalculations and inconsistencies earlier noted, we find it appropriate to remand for the juvenile court to calculate the total number of credits to which Jason is entitled for his days in custody prior to the November 23, 2021 transfer to DJJ.

## DISPOSITION

The matter is remanded for recalculation of precommitment custody credit, including credit for days of custody between the disposition hearing and transfer to DJJ.  The court is ordered to file an amended minute order reflecting the additional credit.  In all other respects, the dispositional order is affirmed.

16

_____

Mayfield, J.*

We concur:

_____

Stewart, Acting P.J.

_____

Miller, J.

*In re Jason V.* (A163366)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

Trial Court:       Contra Costa County Superior Court

Trial Judge:       Hon. John W. Kennedy


Attorney for Appellant:   By Appointment of the Court of Appeal
            First District Appellate Project
            Amanda K. Roze

Attorneys for Respondent:  Rob Bonta
            Attorney General of California

            Lance E. Winters
            Chief Assistant Attorney General

            Jeffrey M. Laurence
            Senior Assistant Attorney General

            René A. Chacón
            Supervising Deputy Attorney General

            Viktoriya Chebotarev
            Deputy Attorney General

            Nanette Winaker
            Deputy Attorney General